**LIGHTWAVE TECHNOLOGIES, INC., Plaintiff,**

v.

**CORNING GLASS WORKS, Defendant.**

No. 86 CIV 0759 (KC).

United States District Court, S.D. New York.

Nov. 21, 1989.

Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Lars I. Kulleseid, Fish & Neave, New York City, for defendant.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

In early 1986, Lightwave Technologies Inc. ("Lightwave") filed an anti-trust suit against Corning Inc., then known as Corning Glass Works ("Corning"), and Corning counterclaimed for patent infringement. After several years of litigation before several judges, including the late Judge Edward Weinfeld, Judge William C. Conner, and this Court, it seemed that the parties were finally succeeding in settling this case in the fall of 1988. However, negotiations broke down in January of 1989. Alleging that Lightwave had reneged on an enforceable agreement for alternate dispute resolution, Corning moved to enforce "the Agreement." On November 15, 1989, we held an evidentiary hearing [1] to determine the intentions of the parties as to the binding effect of the Agreement. We now deny Corning's motion to enforce the proposed Agreement.

The Agreement in question is an agreement to resolve the case through a five day "mini-trial" before a retired federal judge. The mini-trial was to focus solely on Lightwave's anti-trust claims, with Lightwave's recovery limited by a fixed ceiling and

---

1. We observe that, on application of the parties, the proceeding was held in camera, and all relevant papers were filed under seal to preserve Corning's interest in confidentiality, as negotiated by counsel for the parties in the settlement arrangement which is at the heart of this motion.

floor. Throughout the fall of 1988, Corning's attorney, Alfred L. Michaelsen, and Lightwave's attorney, Joseph M. Alioto, discussed the parameters and procedures for such a mini-trial, including how to select the judge, who should be present at the mini-trial, how to preserve the confidentiality of the proceedings, and whether to submit written interrogatories to the judge, and/or have him write a decision. The two attorneys had agreed on most of these issues in late December of 1988. On January 11, 1989, Alioto sent a copy of the proposed Agreement to Franklin W. Dabby ("Dabby"), the founder, President, Chairman of the Board, and Chief Executive Officer of Lightwave, and also one of its major, though not majority, shareholders. In his letter accompanying the proposed Agreement, Alioto recommended that Lightwave sign it, but did not tell Dabby that he, Alioto, had changed the proposed Agreement in two respects, which changes Corning had not yet seen or approved. Defendant's Exhibit G (letter dated January 11, 1989, from Alioto to Dabby, with draft of proposed Agreement); Hearing Transcript (hereinafter "Tr.") at 107–109. After consulting with other members of the Board, Tr. at 223, Dabby rejected the proposed mini-trial Agreement, and attorneys for Lightwave informed the Court that settlement negotiations had failed. Defendant's Exhibit I (letter dated February 1, 1989, from Daniel R. Shulman to the Court).

Corning's reaction to this turn of events was one of shock and disbelief, for Corning believed that Alioto had authority in fact to settle the case for Lightwave. According to Michaelsen, Alioto had told him in July of 1988 that, if a certain unidentified event did not occur by August 31, 1988, he (Alioto) would have written authority to settle the case through a mini-trial, with a cap on Lightwave's potential recovery.[2] On September 1, 1988, Alioto called Michaelsen and indicated that he was ready to proceed with negotiations on the mini-trial proposal. Apparently, Corning did not expect Lightwave to be able to reject the Agreement negotiated by Alioto, because, as Michaelsen stated in his affidavit and at the hearing, Alioto never expressed any limitation on his authority to enter into an agreement which would bind Lightwave, provided that Corning would agree to the outline of the terms that he proposed. Affidavit of Alfred L. Michaelsen, sworn to July 28, 1989 ("Michaelsen Aff."), ¶ 8; Tr. at 38.

■ Corning now argues that the Agreement should be enforced because Alioto had actual authority to bind Lightwave, and because Alioto did in fact agree to bind Lightwave to the mini-trial agreement, without Dabby's signature. In light of the hearing testimony and the documents submitted, we do not find that Alioto had authority to bind Lightwave to the Agreement negotiated by Alioto and Michaelsen. Neither do we find that Alioto in fact agreed to bind Lightwave. Thus, although we are extremely dismayed by the manner in which Lightwave conducted itself during the settlement efforts, we cannot enforce the Agreement.

First, Corning argues that Alioto had actual written authority to bind Lightwave to a mini-trial with a maximum recovery. Although Alioto's letters to Dabby, dated July 1, 1988 and January 11, 1989, do indicate that Alioto was "authorized to attempt to settle the case ... by way of a mini trial with a maximum recovery," Defendant's Exhibit F (letter dated July 1, 1988 from Alioto to Dabby), other documents and testimony at the hearing indicate significant ambiguities as to the meaning of the mini-trial concept and limitations on the scope of Alioto's authority. For example, Dabby testified that he never understood a mini-trial to mean a trial without a jury. Tr. at 189–90. Neither did Dabby expect to have to choose a retired judge from a list of five judges provided by Corning, as provided for in the proposed Agreement. Defendant's Exhibit G, Attachment ¶ 2; Tr. at 211. More importantly, Dabby rejected the inter-connected provisions for non-disclosure and personal liability in paragraph 12 of the proposed agreement. Defendant's

---

**2.** The unidentified event, later disclosed, was the payment by Lightwave of all outstanding out-of-pocket expenses incurred by Alioto and the funding of all future out-of-pocket expenses incurred by Alioto in the prosecution of the lawsuit.

Exhibit G, Tr. at 189–191, 211–13. Finally, Dabby testified that it had been his consistent position that he would not accept a mini-trial proposal unless Lightwave also received a license from Corning. Tr. at 204–205, 207. This testimony is supported by Dabby's letters to Alioto dated July 6, 1988, and August 18, 1988. Plaintiff's Exhibits 1 and 2.

In the face of these ambiguities and misunderstandings, we are unwilling and unable to conclude that Dabby gave Alioto the authority to enter into the Agreement which Alioto and Michaelsen negotiated. Dabby never understood himself to be waiving his right to a jury trial. More importantly, Dabby never consented to personal liability; neither did Dabby ever consent to provisions for non-disclosure. We find that the potential *personal* liability of $25,000 imposed upon Dabby by the Agreement and the permanent gag placed upon Lightwave even if it won, preventing dissemination of Lightwave's vindication in the industry, were wholly collateral to whatever initial authority Lightwave gave Alioto, and that Lightwave was entirely justified in refusing to sign any Agreement containing these provisions. Perhaps most significantly, Dabby indicated to Alioto in the August 18, 1988 letter that "Corning must further agree to license Lightwave to all patents filed for and issued to Corning relating to optical fibers...." Plaintiff's Exhibit 2. As a result, Alioto was not acting within the scope of his actual, written authority when he negotiated an agreement that did not provide for a license. Whether or not Alioto led Michaelsen to believe that he (Alioto) had binding written authority to settle the case is irrelevant, given the unambiguous language in Dabby's August 18, 1988, letter.

Second, Corning has not carried its burden in showing that the parties intended to bind themselves to the Agreement without obtaining the signatures and approval of the principals, i.e., Dabby for Lightwave and a Corning official for Corning. "Whether or not the parties have manifested an intent to be bound must depend in each case on all the circumstances." *International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 56 (2d Cir.1979). The circumstances of this case indicate an intent not to be bound without signatures. To begin with, the draft of the Agreement, prepared by Michaelsen, has signature lines for both principals, which lines were intended, according to Michaelsen, for Corning but not for Lightwave. Tr. at 38, 42, 55. Inexplicably, Michaelsen also testified that these lines were inserted essentially "out of habit and practice and experience." Tr. at 38. In addition, both Alioto *and Lightwave* were expected to sign a stipulation of dismissal, according to the explicit terms of the Agreement. Defendant's Exhibit G, Attachment ¶ 10. Moreover, Alioto testified that he had always intended to have Lightwave sign the Agreement, and that he had informed Michaelsen of this intention on numerous occasions. Tr. at 92, 178. Having observed Dabby, a forceful, assertive and in some respects truculent individual, the Court understands, and credits, Alioto's statement that he simply would not, as a matter of professional prudence, have concluded the Agreement without Dabby's approval.

■ Finally, in response to Corning's argument that the Agreement did not need to be signed because it is an Agreement to arbitrate, which, under New York law, need not be signed to be enforceable, so long as there is other proof that the parties actually agreed on it, N.Y.Civ.Prac.L. & R. 7501 (McKinney 1980), we note that Michaelsen testified for Corning that he considers "mini-trials" and "arbitration" to be two different "species" of the "genus" "alternate dispute resolution." Tr. at 52–53. Since Michaelsen himself testified at the hearing that he did not think he was entering into an arbitration agreement, we decline to treat the mini-trial procedure as a form of arbitration, regardless of the similarities a mini-trial bears to arbitration.

Accordingly, we deny Corning's motion to enforce the proposed Agreement for alternate dispute resolution.

SO ORDERED.